**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 18-1961**

———————

GARY W. DAY, Individually and as Assignee of the Claims of Hudson Insurance Company,

        Plaintiff - Appellant,

    v.

UNITED BANK, f/k/a Bank of Georgetown,

        Defendant - Appellee.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge. (8:16-cv-00975-PX)

———————

Argued: January 29, 2020              Decided: February 20, 2020

———————

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** David Hilton Wise, WISE & DONAHUE, PLC, Fairfax, Virginia, for Appellant. Richard E. Hagerty, TROUTMAN SANDERS, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Brian S. Jablon, WELLENS & JABLON, LLC, Severna Park, Maryland, for Appellant.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gary W. Day, individually and as an assignee of Hudson Insurance Company, appeals the district court's judgment in favor of United Bank. Day alleges that the Bank's failure to notify him that it had been assigned certain claims resulted in significant losses for which the Bank is liable. We affirm on the basis of the district court's well-reasoned opinion.

I.

In 2009, Andy Persaud, president of an eponymous construction company (Persaud Companies, Inc., "PCI"), opened an account at the Bank of Georgetown (acquired in 2016 by United Bank) (the "Bank"). PCI obtained a line of credit from the Bank, secured in part by PCI's accounts receivables for its Government contracts. The Bank opened two separate accounts for Persaud, one of which, controlled by the Bank, received money deposited by the Government (among others) for work completed. Every month, PCI would apply to borrow money based on the amount in the Bank's account and the Bank's assessment of PCI's finances. It is uncontested that, contrary to the requirements of the Anti-Assignment Act, 41 U.S.C. § 6305, after 2009, the Bank did not provide Hudson with notice of the assignment of PCI's contracts. The Bank did, however, file a UCC Financing Statement on August 7, 2009.

In an unrelated series of events, in December 2010 Persaud established a bonding program with Hudson Insurance Company ("Hudson"), a surety that agreed to issue payment and performance bonds on PCI's behalf. In the course of underwriting the

bonding program, Hudson's agent obtained from Persaud documents showing all banks with a security interest in PCI as well as the promissory note and loan documents between PCI and the Bank. Pursuant to the bonding program, Persaud executed a General Indemnity Agreement in favor of Hudson, and Hudson began issuing bonds for PCI's Government contracts.

In late 2011, Persaud requested an expansion of the bonding program. Hudson was wary, as it considered Persaud to be personally risky as a result of a contentious divorce. Nonetheless, it agreed to execute an amended General Indemnity Agreement on two conditions: first, that an additional indemnitor be added, and second, that all funds from contracts relating to the Agreement run through "funds control" (a third-party escrow account). PCI's counsel introduced Gary W. Day to Persaud, and Day agreed to serve as a second indemnitor in exchange for payment to Day of one percent of the face amount of all bonds issued by Hudson. Persaud, Day, and Hudson executed the amended General Indemnity Agreement in October 2011. Pursuant to this contract, Day and Persaud agreed to exonerate and indemnify Hudson from and against any and all demands, losses, and liabilities that Hudson might incur arising from the PCI bonds.

A few months later in the spring of 2012, Hudson began receiving claims on PCI's projects. As surety, Hudson stepped in to cover these claims. Hudson subsequently initiated an investigation. In July 2012, after Persaud refused to provide Hudson with the

3

information it requested, Hudson demanded collateral security pursuant to the General Indemnity Agreement.[1] Contrary to the Agreement, Persaud did not pay.

Hudson ultimately lost $3.7 million by paying out claims related to PCI, and it sought to recoup these losses in an indemnification suit against Persaud and Day filed in January 2013. Day cross-claimed against PCI and Persaud. During discovery in this litigation, Hudson first learned the details of the loan arrangement between Persaud and the Bank.

Hudson and Day obtained default judgments against PCI and Persaud, who is believed to be penniless. Day and Hudson settled, and, pursuant to the settlement agreement, Day obtained the assignment of Hudson's claims against the Bank.

Unable to recover directly from Persaud or PCI, Day brought this action against the Bank. Day asserts that, had Hudson been aware of the nature of the banking relationship between Persaud and the Bank, it would never have agreed to issue the bonds on which it suffered losses. Day maintains that all of his injuries flow from the failure of the Bank to alert Hudson to Persaud's assignments, and that the Bank is therefore liable for breach of statutory, tort, and common law duties to him.

---

[1] In this same period, Persaud asked, and the Bank granted, a significant increase in his line of credit. Persaud defrauded the Bank in order to obtain this credit increase, a federal crime to which he pled guilty in 2013.

II.

The district court ruled for the Bank on alternative grounds. The court held Day failed to state a claim and so dismissed his suit, and, alternatively, granted summary judgment finding all of Day's claims time-barred.

With respect to the latter, the district court recognized that, under Maryland law, an action only accrues when the claimant in fact knew or was on inquiry notice of the alleged wrong. Reasoning that Hudson had both cause to investigate and the information that suggested it was necessary to do so, the court concluded that Day was on inquiry notice no later than October 2011, when Day, Hudson, and Persaud executed the amended General Indemnity Agreement. At that time, Hudson was already concerned about the state of Persaud's finances and possessed the Bank's UCC filing and the loan documents memorializing the agreement between the Bank and Persaud. As the court explained:

> It blinks at reality to suggest that Hudson — already concerned about PCI's financial health, on notice of a UCC filing, and in possession of the Bank's security agreement reflecting its interest in PCI's accounts receivable and of PCI's debts owed — did not have sufficient facts from which to inquire further about the Bank and PCI's relationship. Day and Hudson, as sureties in the industry, certainly should have known the import of such arrangements.

We agree with the district court's analysis. The latest Day could have filed suit within the limitations period was therefore October 2014; he did not actually file suit until April 2016. Day's claim is therefore time-barred.

We also agree, for the reasons thoroughly explained by the district court, that Day's complaint fails to state a claim. The district court rejected Day's negligence claim on multiple grounds, concluding that the statute did not establish a duty to Day on the part of

5

the Bank and that Maryland law precluded Day's recovery in tort for purely economic losses. Next, the court dismissed Day's attempts to sue directly under the Anti-Assignment Act, concluding that Day lacked a cause of action and that there was no authority to support his argument that he may be subrogated to the Government. Day's constructive fraud claim also failed because, as the district court explained, Day could show neither violation of a duty nor the existence of a confidential relationship between Day and the Bank, both necessary prerequisites to stating a constructive fraud claim. Finally, the district court properly dismissed Day's counts seeking equitable relief, noting that Day could not meet the elements of breach of trust, constructive trust, or accounting. [2] As the court explained, "Day's alleged rights to relief either are made pursuant to rights that Day cannot assert; are brought for conduct for which the Bank is not liable; or seek remedies to which Day is not entitled." This analysis is sound.

## III.

Finding no fault in the district court's judgment that Day failed to state a claim and that his claims were time-barred, the judgment of the district court is

*AFFIRMED.*

---

[2] Day does not appeal the district court's dismissal of Counts VII and VIII. We therefore do not discuss these claims.

6